UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MATTHEW W. D.,[1] | Case No. 2:20-cv-04797-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Matthew W. D. ("Plaintiff") filed a Complaint on May 29, 2020, seeking review of the Commissioner's denial of his application for supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on January 26, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff filed for SSI on October 31, 2016 alleging disability commencing October 2, 2016. AR 32, 158-67. On January 28, 2019, after his application was denied (AR 95-99), Plaintiff, represented by counsel, testified via video before an Administrative Law Judge ("ALJ"). AR 32, 50, 54-67. A vocational expert ("VE") testified telephonically. AR 67-76. On April 15, 2019, the ALJ issued a decision finding Plaintiff was not disabled. AR 32-43. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date and had severe impairments of bilateral knee osteoarthritis, posttraumatic stress disorder, and generalized anxiety disorder. AR 34-35. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 35), and he had the residual functional capacity ("RFC") to perform light work[2] except (AR 36):

> [Plaintiff] can stand and/or walk for four hours out of an eight-hour workday. He can occasionally stoop, kneel, crouch, crawl, and climb. [Plaintiff] can frequently balance. He is limited to jobs that can be performed while holding a hand-held assistive device required for uneven terrain or prolonged ambulation. [Plaintiff] is limited to occasional face-to-face public interaction.

---

[2] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.
20 C.F.R. § 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

Based on the VE's testimony and Plaintiff's RFC, the ALJ found Plaintiff was unable to perform his past relevant work as a pullman conductor, tractor trailer truck driver, or emergency medical technician ("EMT"). AR 40-41. The ALJ found that Plaintiff, at 48 years old on the application date, was defined as a "younger individual," but that he subsequently changed age category to "closely approaching advanced age." AR 41. The ALJ also found that he has at least a high school education[3] and is able to communicate in English. AR 41.

The ALJ next found that, if Plaintiff had the RFC to perform a full range of light work, a Medical-Vocational rule would direct a finding of "not disabled." AR 41-42. However, because Plaintiff's ability to perform all or substantially all the requirements of light work has been impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 42. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including office helper (Dictionary of Occupational Titles ("DOT") 239.567-010) and photocopy machine operator (DOT 207.685-014). AR 42. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the SSA, since his application was filed. AR 42-43.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the agency's final decision. AR 1-7.

## II.

## LEGAL STANDARDS

**A.      Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if

---

[3] Plaintiff completed at least two years of college in 1991 and completed additional trade or vocational school courses from 1989 to 2016. AR 192.

they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.        The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at

1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. § 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show he is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show he is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a

5

"limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. <u>See</u> <u>Hill v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Tackett</u>, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present two disputed issues, reordered as (Jt. Stip. at 4):

<u>Issue No. 1</u>: Did the ALJ properly consider Plaintiff's subjective complaints;[4]

<u>Issue No. 2</u>: Did the ALJ properly evaluate the opinion evidence.[5]

### A.   **Subjective Symptom Testimony**

In Issue No. 1, Plaintiff contends that the ALJ improperly assessed his subjective complaints. Jt. Stip. at 4, 19-23.

#### 1.   **Applicable Law**

Where a claimant produces objective medical evidence of an impairment

---

[4] Before the ALJ's decision, SSR 16-3p went into effect. <u>See</u> SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." <u>Id.</u> Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. <u>Id.</u>; <u>see also</u> <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." <u>Elizabeth B. v. Comm'r Soc. Sec.</u>, 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020).

[5] As framed by Plaintiff, this issue challenges only the ALJ's assessment of Dr. Purne's opinion. Jt. Stip. at 4. However, noted below, Plaintiff challenges other opinion evidence elsewhere in the joint stipulation. The Court has grouped those challenges under reordered Issue No. 2.

6

that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

## 2.   **Hearing Testimony**

The January 2019 hearing is summarized as follows. Counsel made an opening statement describing Plaintiff's alleged disability as osteoarthritis in his hips and knees, posttraumatic stress disorder, and general anxiety disorder. AR 52. Plaintiff testified he last worked at Swift Transportation as a cross-country tractor trailer driver for a little over a year. AR 54-56. He left the job because it was more physical than he originally thought, with the sedentary aspect, the constant motion, and the lengthy durations of sitting exacerbating pain in his knees and hips. AR 55, 65-66. He did not lift much on the job, the heaviest item being his laundry bag at no more than 10 pounds. AR 56.

Before that, he worked for Amtrak as a conductor to ensure the safety and administration of the train and its passengers. AR 57. When there were incidents with the train—for example an air hose coming apart—he was

required to get off the train and walk on loose dirt or gravel on uneven surfaces, which, over time, increasingly bothered him. AR 57. He worked the Los Angeles-to-San Diego route and in the yard. AR 57. Yard work also entailed walking on uneven surfaces. AR 57. He did not have to lift or carry anything in the Amtrak job, but he had to squat and perform pulling actions, such as the lever to separate trains or throw switches to move from one track to another. AR 57-58. The switches, depending on their level maintenance, required about 60 pounds of force to manipulate. AR 58. He also had to load passenger bags, not frequently but about once or twice a day. AR 59.

Before his conductor job, he was an EMT for almost 20 years. AR 60-61. In that capacity, he would deadlift up to 200 pounds. AR 61. He took classes, conducted more patient care, and was permitted to perform other treatments than lower-level EMTs. AR 60-61.

Over the last couple of years, his daily activities have been as follows. He rises between 7:30 and 8:00 a.m. and makes breakfast, such as an egg and coffee, then sits and reads the paper, checks email, showers, and takes care of his personal hygiene needs, after which, if needed, he runs errands such as going to the bank, doctors' appointments, or the market, he will do so. AR 62. Around 5:00 or 6:00 p.m., he will prepare or pick up something for dinner, after which he takes care of anything else that needs to be done, such as laundry, and then watch a movie or play a computer game. AR 62.

He spends the rest of his day visiting friends or doing work at the Veterans of Foreign Wars ("VFW") hall down the street from him. AR 63. He helps at the VFW once or twice a week, opening it up, turning the lights and heater on, and other tasks like that. AR 63. He also does some work with a youth group, but very infrequently. AR 63. He used to ride his bike and scuba dive, but he can't anymore because those activities are too physical. AR 63.

His retired mother and nephew live with him. AR 62-63. His mother

8

helps with housekeeping, cooking, cleaning, and laundry. AR 63.

Plaintiff has been unable to work due to long-term hip and knee problems. AR 54. He also has mental-health issues. AR 63-64. During his work as an EMT, there were things he encountered that came back later to bother him at times. AR 64. A couple of times per week he will "kind of go off on [his] own," such as to the pier to throw breadcrumbs to the birds. AR 64. He distances himself like that to distract his mind. AR 64. Dr. Richard Jenkins provides him medication for his condition, and it helps. AR 64.

If he walks or stands significantly, the next day is more difficult, but if he does not engage in substantial physical activity, arthritis does not bother him, and he can walk without much trouble. AR 65. As an example of walking too much, Plaintiff said that walking from one end of a mall to the other, and then to his parking spot, is "a little too much," and would require him to take sitting or standing breaks. AR 65. He can move around for about an hour and then he will need something to lean on, such as a stool, or he will have to find a chair to sit on and relax his hip and knee. AR 65. His ability to sit varies depending on the comfortableness of the chair, but he can do so generally for 30 to 45 minutes. AR 65. If travelling by car, he must plan out the trip. AR 65. For example, when he visits relatives in Arizona, he needs a second driver in case he cramps or experiences pain. AR 66. Dr. Mikael Purne has prescribed him a cane, which he uses two or three times a week. AR 66.

Plaintiff takes pain medications "[w]hen [he] needs them," and, if he knows he will be doing considerable walking, he will bring his cane. AR 66.

### 3.  <u>Analysis</u>

The ALJ considered Plaintiff's testimony and other subjective allegations of disability in the record and found the medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements "concerning the intensity, persistence[,] and limiting effects of [the]

9

symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 37. The ALJ found Plaintiff's subjective complaints inconsistent with: (1) unremarkable physical findings; (2) normal mental findings; (3) his own statements to his primary care provider; (4) improvement in his mental health; and (5) the medical opinions. AR 37-38.

To start, the Court notes the ALJ did not reject Plaintiff's testimony in full, but found it "not entirely" consistent with the record, constrained the RFC to a limited range of light work and accommodated nonexertional limitations by limiting Plaintiff to "occasional face-to-face public interaction," and consulted a VE to determine the extent to which the limitations eroded the occupational base. AR 36, 41-42. Those determinations necessarily partially credited Plaintiff's subjective complaints. To the extent the ALJ did not further credit aspects of Plaintiff's complaints, he provided legally sufficient reasons for doing so.

First, the ALJ noted that although SSI is not payable prior to the month following the month in which the application was filed, he considered the complete medical history consistent the Regulations (AR 32), and he detailed a number of unremarkable, mild physical findings. AR 37-38, 40. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider in his analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. For example, the ALJ examined records showing Plaintiff retained his full range of motion and full motor strength, while exhibiting generally normal results on specialty knee tests, such as the Valgus stress test, anterior and posterior drawer test, and Lachman's test. AR 38, 40, 265. Moreover, the single magnetic resonance imaging ("MRI") of record, from May 2015, revealed only mild changes of osteoarthritis involving the medial sub-joint, spur formation, and chondromalacia patellae. AR 38, 81, 272-73. Later, in

2017, physical examination findings revealed Plaintiff had ongoing tenderness to palpation and limited range of motion of his bilateral anteromedial aspect of his knees, but otherwise showed Plaintiff had good strength, flexibility, range of motion, and muscle tone. AR 38, 334, 340, 345, 348, 354.

Plaintiff acknowledges some of the evidence cited by the ALJ, stating "there is evidence of good strength, flexibility, passive and active range of motion to upper and lower extremities," but he counters that some of those same records show findings supportive of his claim. Jt. Stip. at 21. However, as mentioned, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [the Court] may not substitute our judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Reddick, 157 F.3d at 725 (ALJ can satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). The ALJ properly considered the inconsistency between the medical findings and Plaintiff's subjective allegation of disability as one of many other valid factors supporting the decision. See Burch, 400 F.3d at 681.

Second, the ALJ found that psychological findings also undermined Plaintiff's complaints. AR 38. For example, although treatment notes in 2017 and 2018 showed that Plaintiff occasionally appeared anxious and nervous, he was generally described as "normal," alert, oriented, calm, and relaxed. AR 38, 332, 334, 340, 342, 348, 351, 354; see also 324-30. As with the physical findings, Plaintiff points to other notations in some of those same records, such as rapid speech, and mild tremor/shaking of the hands. Jt. Stip. at 22, citing AR 342, 351. However, to the extent some findings outlined above conflicted with other findings, they are nonetheless substantial evidence supporting the ALJ's decision. See Ford, 950 F.3d at 1156 ("Although [claimant] argues that the ALJ failed to recognize the inherently variable nature of mental illness,

11

'[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" (citation omitted)). The ALJ properly considered the inconsistency between these mental-health findings and Plaintiff's subjective allegation of disability. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857.

Third, the ALJ noted Plaintiff made statements inconsistent with disability. AR 38. Indeed, in 2017 and 2018, Plaintiff repeatedly reported to his primary care provider that he was "doing well" and he "denied any severe pain." AR 38, 339, 344, 347, 353. The ALJ properly considered this factor. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (in assessing subjective complaints, an ALJ may consider prior inconsistent statements and testimony by the claimant that "appears less than candid"); Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because her testimony was undermined by her own admissions).

Fourth, the ALJ noted Plaintiff experienced improvement. AR 38. For example, in 2018, Plaintiff was prescribed psychiatric medication by Dr. Jenkins, which appeared to improve his symptoms. AR 38, 324-30. Moreover, during this period of treatment with Dr. Jenkins, Plaintiff's mental status examination findings were within normal limits. AR 38, 324-30, 334, 337, 340, 348, 354. Indeed, Plaintiff admitted at the hearing that his treatment with Dr. Jenkins helped. AR 64. The ALJ properly considered Plaintiff's improvement in discounting his testimony that his mental condition was disabling. See Morgan v. Comm'r Soc. Sec., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discounted claimant's subjective complaints by citing physician's report indicating that symptoms improved with treatment); Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled with treatment are not disabling).

Fifth, and finally, the ALJ properly found that Plaintiff's subjective

12

complaints about his physical limitations were inconsistent with the medical opinion evidence (AR 38-40), discussed below. See, e.g., Ghanim, 763 F.3d at 1163; Sherman v. Colvin, 582 F. App'x 745, 748 (9th Cir. 2014) (credibility determination supported in part because of a lack of physician opinion restrictions on claimant's activities).

Defendant points to other inconsistencies and Plaintiff's daily activities, which the ALJ discussed at Step Three in determining whether Plaintiff's impairments met or equaled a listed impairment. Jt. Stip. at 37-39; AR 35-36. The Court need not decide whether the ALJ intended to rely on these factors in his subjective symptom evaluation, which came later in the decision, and whether they are supported by substantial evidence, considering the other valid reasons for discounting the testimony. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, that is, the unremarkable physical and mental-health findings, Plaintiff's own statements, improvement in his condition, and inconsistency with opinion evidence. Those grounds are sufficient to affirm the ALJ's decision on the issue.

**B.    Opinion Evidence**

In Issue No. 2, Plaintiff contends the ALJ improperly evaluated the opinion of treating physician Dr. Purne. Jt. Stip. at 4-9. Plaintiff also challenges the ALJ's evaluation of his treating psychiatrist Dr. Richard

13

Palmer's opinion on the severity of his mental limitations. Id. at 9 n.3, 22-23.

### 1.   **Applicable Law**

In setting an RFC, an ALJ must consider all relevant evidence, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins, 466 F.3d at 883 (citation omitted); 20 C.F.R. § 416.945(a)(1). The ALJ must also consider all the medical opinions "together with the rest of the relevant evidence [on record]." 20 C.F.R. § 416.927(b).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012.

1    Finally, the ALJ is not required to recite "magic words" or "incantations" to

2    reject an opinion. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir. 1989). "A

3    reviewing court [is] not deprived of [its] faculties for drawing specific and

4    legitimate inferences from the ALJ's opinion." <u>Id.</u>; <u>Towne v. Berryhill</u>, 717 F.

5    App'x 705, 707 (9th Cir. 2017) (citing <u>Batson</u>, 359 F.3d at 1193 (if the ALJ

6    provides enough information that the reviewing court can draw reasonable

7    inferences from the record in support of the ALJ's findings, then the ALJ's

8    findings should be upheld)).

9        **2.   Analysis**

10           **a.   Dr. Purne**

11       In December 2016, Dr. Purne completed a two-page "Medical Source

12    Statement – Physical." AR 293-94. The checkbox, optional fill-in-the-blank

13    statement indicates that Plaintiff can: (1) lift and carry 100 pounds occasionally,

14    and 50 pounds frequently; (2) stand and/or walk less than two hours of an

15    eight-hour workday;[6] and (3) sit, with normal breaks, for six hours of an eight-

16    hour workday. AR 293. Dr. Purne checked boxes indicating Plaintiff needs to

17    alternate standing and sitting, but breaks and lunch periods would provide

18    sufficient relief. AR 293. He further indicated Plaintiff can occasionally climb,

19    balance and stoop, but never kneel or crouch. AR 294. He indicated Plaintiff is

20    unrestricted with his upper extremities in reaching, handling, fingering, and

21    feeling. AR 294. Finally, he checked boxes indicating Plaintiff is restricted from

22    moving machinery, but not heights, temperature extremes, chemicals, dust, or

23    any other environmental restriction. AR 294. Dr. Purne concluded the

24    statement by opining Plaintiff's prognosis is "Fair." AR 294.

25       The ALJ provided a detailed summary of Dr. Purne's opinion, and gave

26

27       ──────────────

28       [6] In this category, Dr. Purne handwrote that Plaintiff uses a cane for
    "prolonged walking." AR 293.

15

it no greater than some weight because: (1) it was only partially consistent with evidence of record; (2) it was inconsistent with Plaintiff's statements; (3) the standing-walking limitation was not consistent with the overall evidence of record; and (4) it conflicted with other opinion evidence. AR 38-39.

The ALJ conducted a proper assessment of Dr. Purne's opinion.

Preliminarily, the Court notes that the ALJ did not reject Dr. Purne's opinion entirely. By assigning the opinion "some" weight instead of "no" weight, the ALJ necessarily gave consideration and credited aspects of the opinion. AR 39. The ALJ conducted a detailed review of the facts and clinical evidence along with Dr. Purne's opinion, and, in light of the opinion, "further accommodated [Plaintiff]'s musculoskeletal disorder by limiting him to light work with the further limitation on standing and/or walking to four hours in an eight-hour workday." AR 39; See, e.g., Reddick, 157 F.3d at 725; Waldner v. Colvin, 2015 WL 711020, at *6 (D. Or. Feb. 18, 2015) (no error in RFC finding that specifically included limitations tailored to claimant).

To the extent the ALJ did not accept more-restrictive physical limitations, he gave proper reasons for doing so. First, the ALJ found the opinion was only partially consistent with evidence of record. AR 39. That evidence, earlier summarized in the decision and outlined above, properly supported this reason. See, e.g., Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results[ or] reports . . ." (internal citation omitted)); Warre, 439 F.3d at 1006.

Second, the ALJ found the opinion partially consistent with Plaintiff's reports to his primary care provider that he was doing well and denied severe pain, and, by implication, was inconsistent with the more-restrictive limitations in the opinion. As discussed above, that finding is supported by the record, and justifies the ALJ's reasoning. AR 38-39, 339, 344, 347, 353; See Shavin, 488 F.

16

App'x at 224 (ALJ may reject physician's opinion by noting conflicting testimony); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995) (ALJ may reject opinion that conflicts with claimant's statements).

Third, the ALJ properly found the standing-walking limitation not consistent with the overall evidence of record. AR 39. As an example, the ALJ mentioned that findings revealed ongoing tenderness to palpation of Plaintiff's bilateral anteromedial knee with limited range of motion, but records otherwise showed less-limiting findings. AR 39. Indeed, throughout the record, Plaintiff appeared with mentioned tenderness to palpation and limited range of motion (AR 39, 334, 340, 345, 348, 354), but he otherwise generally demonstrated good strength, flexibility, range of motion, and muscle tone (AR 39, 254, 256, 260, 331, 334, 340, 342, 345, 348, 354), full motor strength in extremities, and no gait disturbance (AR 296-97). The ALJ properly found this evidence inconsistent with the opined two-hour standing/walking limitation, and reasonably partially accounted for the limitation by still restricting Plaintiff to a four-hour standing/walking limitation. AR 36, 38; <u>See, e.g.</u>, <u>Shavin</u>, 488 F. App'x at 224; <u>Aranda v. Comm'r Soc. Sec. Admin.</u>, 405 F. App'x 139, 141 (9th Cir. 2010) (persuasiveness of physician's opinion must take into account the opinion's consistency with the record as a whole, among other factors).

Fourth, the ALJ discussed the State Agency medical opinion of Dr. B Harris. AR 39. On February 14, 2017, Dr. Harris opined that Plaintiff could: (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk with normal breaks for a total of four hours; and (4) sit with normal breaks for a total of about six hours in an eight-hour workday. AR 84. Dr. Harris further found that Plaintiff could occasionally climb ramps/stairs and ladders/ropes/scaffolds, frequently balance, and occasionally stoop, kneel, crouch, and crawl. AR 85. The ALJ found this opinion generally consistent with the overall evidence of record, but afforded it

"some weight" to the extent the ALJ further accommodated Plaintiff's musculoskeletal disorder by limiting Plaintiff to the use of an assistive device for uneven surfaces or prolonged ambulation. AR 39. The ALJ properly considered the conflict between Dr. Purne's opinion, in particular as it pertains the stand/walk limitation, and Dr. Harris's opinion, in assessing the opinions and fashioning the RFC. See Ford, 950 F.3d at 1156 (conflicting medical professional findings a valid consideration in discounting an opinion); Batson, 359 F.3d at 1197 ("[I]t was permissible for the ALJ to give [opinions] minimal evidentiary weight, in light of . . . opinions and observations of other doctors."). The State Agency opinion is substantial evidence supporting the ALJ's reasoning. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) ("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); Kane v. Colvin, 2015 WL 5317149, at *3 (E.D. Cal. Sept. 10, 2015) (ALJ properly rejected treating physician's opinion in part because it was contradicted by state agency physicians' findings).

Finally, in reviewing the record as a whole, which this Court must do, it is apparent Dr. Purne's opinion is inconsistent with itself. Reddick, 157 F.3d at 720. In assigning Dr. Purne's opinion only "some weight," the ALJ specifically noted that the doctor opined Plaintiff had "no lifting or carrying limitations." AR 38. Looking to the opinion, the unaffected "lift and/or carry" limitation meant, according to Dr. Purne, Plaintiff could lift and carry 100 pounds occasionally, and 50 pounds frequently. AR 293. On its face, that is plainly inconsistent with the minimal stand/walk limitation while using a cane that Dr. Prune also assessed. AR 293; Shavin, 488 F. App'x at 224; Zettelmier v. Astrue, 387 F. App'x 729, 731-32 (9th Cir. 2010) (internal inconsistency within doctor's own opinion provided proper basis to discredit it); Morgan, 169 F.3d at 601-03 (ALJ may reject a medical opinion that is internally inconsistent).

18

The ALJ did not err in his assessment of Dr. Purne's opinion.

      **b.**    <u>**Dr. Palmer**</u>

In December 2016, Dr. Palmer completed a letter and a "Mental Disorder Questionnaire Form." AR 278, 285-89. The documents related that the doctor diagnosed Plaintiff with posttraumatic stress disorder and generalized anxiety disorder, and that he had been treating Plaintiff monthly since April 2015 or September 2015. AR 278, 289. The doctor indicated that Plaintiff's symptoms improved "somewhat" with medication, but he did not anticipate much more improvement in Plaintiff's concentration in the near future. AR 278, 289. In the letter, the doctor opined that Plaintiff was unable to work because he had impaired concentration and his confidence, judgment, and interaction with others were barriers to working effectively. AR 278.

The ALJ provided a detailed summary of Dr. Palmer's letter and questionnaire, and gave them little weight because they were: (1) internally inconsistent; (2) inconsistent with the overall record, including mental status findings in within normal limits; and (3) inconsistent with the opinion evidence. AR 39-40.

The ALJ conducted a proper assessment of Dr. Palmer's opinion.

As with Dr. Purne's opinion, the Court notes that the ALJ did not reject Dr. Palmer's opinion entirely. By assigning the opinion "little" weight, the ALJ necessarily gave consideration and credited aspects of the opinion. AR 39. The ALJ conducted a detailed review of evidence of record along with the mental opinions, and specifically accounted for Plaintiff's mental health by limiting him in the RFC to occasional face-to-face public interaction. AR 36; <u>See, e.g.</u>, <u>Reddick</u>, 157 F.3d at 725; <u>Waldner</u>, 2015 WL 711020, at *6.

To the extent the ALJ did not accept the more-restrictive mental limitations of Dr. Palmer's letter and questionnaire, he gave proper reasons for doing so. First, the ALJ noted several internal inconsistencies. For example, in

the letter, as mentioned Dr. Palmer opined that Plaintiff was unable to work because he had impaired concentration, and that Plaintiff's confidence, judgment, and interaction with others were barriers to working effectively. AR 39, 278-79). However, in the questionnaire he stated that Plaintiff did not have any impairment in memory, concentration, judgment, or intellectual functioning. AR 39, 286. Dr. Palmer also stated in the questionnaire that Plaintiff was able to interact appropriately with others. AR 39, 288. Further, while the doctor opined Plaintiff's ability to sustain attention, effectively complete assignments, and to manage work stress was impaired, he opined that Plaintiff remained able to manage his own funds. AR 39, 288-89. The ALJ properly considered the internal inconsistencies in Dr. Palmer's opinion. Shavin, 488 F. App'x at 224; Zettelmier, 387 F. App'x at 731-32; Morgan, 169 F.3d at 601-03.

Second, the ALJ properly assigned less weight to Dr. Palmer because providers consistently recorded objective test results that were "within normal limits" upon mental status examination. AR 38, 324-30. For example, as previously mentioned, treatment notes of Dr. Jenkins indicated Plaintiff demonstrated normal thought process, thought content, and orientation, as well as normal eye contact, mood, affect, and speech. AR 35, 324-30, 334, 337, 340, 348, 354. These generally normal findings are inconsistent with an opinion of total disability. See Hume v. Saul, 776 F. App'x 507 (9th Cir. 2019) ("Substantial evidence supports the ALJ's finding that [a treating physician's] opinion was inconsistent with the normal mental status findings reported by other doctors."); Shavin, 488 F. App'x at 224; Aranda, 405 F. App'x at 141.

Third, and finally, the ALJ assigned "great weight" to the opinion of reviewing psychologist Dr. Preston Davis. AR 40. Dr. Davis opined that Plaintiff could perform complex work tasks, as well as interact appropriately with supervisors and with coworkers, and he could adapt to work setting that

was not fast paced. AR 40, 82-83, 86-87. The ALJ found the opinion supported by the overall evidence of record, and consistent with Plaintiff's mental health treatment, mental status examination findings, and Plaintiff's testimony that he could perform his activities of daily living. AR 40. Dr. Davis's opinion sharply contrasted with Dr. Palmer's opinion, and the ALJ properly considered that conflict in assigning weight to the opinions and discounting Dr. Palmer's opinion. See Ford, 950 F.3d at 1156; Batson, 359 F.3d at 1197; Saelee, 94 F.3d at 522; Kane, 2015 WL 5317149 at *3.

The Court finds that the ALJ did not err in his assessment of Dr. Palmer's opinion. Accordingly, reversal is not warranted.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: February 05, 2021

JOHN D. EARLY
United States Magistrate Judge

21